FILED

2014 Aug-04 PM 03:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
JOSEPH ADAM TOLBERT,          }
                              }
        Plaintiff,            }
                              }    CIVIL ACTION NO.
v.                            }    2:13-CV-02108-WMA
                              }
MARTIN TRAMMELL, et al.,      }
                              }
        Defendants.           }
                              }
```

**MEMORANDUM OPINION**

This case comes before the court on a motion to dismiss filed by defendant Martin Trammell ("Trammell") and joint motions to dismiss filed by defendants City of Birmingham ("City") and Chief of Police A.C. Roper ("Roper"). Plaintiff, Joseph Adam Tolbert, instituted this action claiming that Trammell, an officer of the Birmingham Police Department ("BPD"), violated state and federal laws when he stopped plaintiff's vehicle and that the City and Roper had unconstitutional practices and unlawfully failed to train and supervise Trammell and other BPD officers.

For the reasons stated below, the court will deny Trammell's motion to dismiss in part but will grant the City's and Roper's joint motions to dismiss. By separate order, the court will dismiss counts three and four of the amended complaint as against the City and Roper in his individual and official capacities, counts one and two as against Trammell in his official capacity, and counts eleven and twelve as against Roper in his individual and

official capacities.  The case will proceed with counts one and two only as against Trammell in his individual capacity and counts five through ten as against Trammell in his individual capacity.

### FACTS

For the purposes of a motion to dismiss for failure to state a claim, the court accepts plaintiff's well-pled facts as true and draws all reasonable inferences in his favor. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  Trammell disputes, but the City and Roper do not have sufficient information to admit or deny, plaintiff's allegations as to Trammell's conduct upon stopping plaintiff's car on November 20, 2011.  The parties do not dispute that Trammell was an officer with the BPD on that date.

Trammell stopped plaintiff's car near Trussville, Alabama, after plaintiff had exited from the interstate.  Plaintiff had as passengers his family, consisting of a woman and her three minor children.  Trammell sped past plaintiff's car, cut in front of him, and braked, causing plaintiff to stop suddenly.  Trammell ran to the driver's side window of plaintiff's car, while showing his BPD badge in his hand, and screamed through the open window, "You don't know who you are messing with!"  Trammell then hit plaintiff in the area around his eye, either intentionally as a punch or unintentionally while flailing around his arms.

The woman yelled for Trammell to stop and told him that there were children in the car.  Trammell pulled his handgun and pointed

it first at plaintiff, then at the woman, then at each of her three children.  Plaintiff got out of his car, while Trammell held the handgun and cursed and insulted plaintiff.  The woman shouted out that she had called the police, at which point Trammell ran back to his truck and drove away in it.

## PROCEDURAL HISTORY

The City and Roper filed a joint motion to dismiss the original complaint based on Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).  The court denied this motion insofar as it was based on Rule 12(b)(5).  The City and Roper supplemented their 12(b)(6) motion in their original answers.  Specifically, their second affirmative defenses asserted that the complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983 ("§ 1983"); their fourteenth affirmative defenses asserted immunity; and their eighteenth affirmative defenses asserted state-agent immunity pursuant to ALA. CODE § 6-5-338.  In its order of April 24, 2014, the court gave notice to plaintiff of its intent to consider all claims as against the City and as against Roper in his individual **and** official capacities for possible dismissal. *See Davken, Inc. v. City of Daytona Beach Shores*, 159 F. App'x 970, 973 (11th Cir. 2005); *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 527 (11th Cir. 1983).

Following briefing on the City's and Roper's 12(b)(6) motion, plaintiff filed a motion to amend his complaint to supplement the

3

factual content.  The court held an oral hearing and granted the motion pursuant to Federal Rule of Procedure 15(a)(2).  At hearing, plaintiff consented to dismissal of his state law claims as against the City based on plaintiff's failure to satisfy ALA. CODE § 11-47-23.  Plaintiff thereafter filed his amended complaint, which added factual allegations and removed all state law claims as against the City.  Pursuant to the schedule set by court order, Trammell filed a motion to dismiss the amended complaint, and the City and Roper filed a joint motion to dismiss the amended complaint.  After briefing by all parties, defendants' motions are under submission to the court.

## DISCUSSION

Defendants may move to dismiss a complaint pursuant to Rule 12(b)(6) if the plaintiff has failed to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  To survive a 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must view the complaint "in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts" and any reasonable inferences drawn from those facts as true. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell*

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Mere conclusory statements in support of "threadbare recitals of the elements of a cause of action" do not suffice to defeat a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

Defendants seek dismissal of all claims based on the failure to state a claim and based on qualified immunity. The court addresses the parties' arguments in the following order: (I) the § 1983 claims, (II) the claim for declaratory and injunctive relief, (III) the state law claims against Trammell, and (IV) the state law claims against Roper.

## I.    Section 1983 Claims – Counts 1-3

Trammell contends that plaintiff's amended complaint fails to state a claim against him under § 1983 and that he is entitled to federal qualified immunity (counts 1-2). The City and Roper contend that plaintiff's amended complaint fails to state a claim against them under § 1983 and that Roper is entitled to federal qualified immunity (count 3). For both types of allegations——that a complaint fails to state a claim and that a defendant is entitled to federal qualified immunity——the first step in assessing § 1983 claims requires "isolat[ing] the precise constitutional violation" alleged. *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Section 1983 does not confer any substantive rights, so § 1983 claims must plead violations of "federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S.

386, 394 (1989) (quoting *Baker*, 443 U.S. at 144 n.3).

Plaintiff's amended complaint pleads violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. As discussed further below, the court will dismiss the § 1983 claims insofar as they are based on the Fifth, Eighth, or Fourteenth Amendments; the court will dismiss some but not all of the § 1983 claims insofar as they are based on the Fourth Amendment.

**A.   Eighth Amendment**

Plaintiff asserts that Trammell, the City, and Roper are liable for Trammell's violations of plaintiff's Eighth Amendment rights, presumably the right to be free from cruel and unusual punishment. The facts indicate that Trammell's interactions with plaintiff occurred during a vehicle stop, not during any post-conviction detention. "It is beyond cavil that the Eighth Amendment applies **only** after a prisoner is convicted." *United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992) (emphasis added); *see also Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997). Thus, plaintiff's § 1983 claims as against Trammell, the City, and Roper will be dismissed insofar as the claims are based on the Eighth Amendment.

**B.   Fourteenth Amendment**

Plaintiff claims that Trammell, the City, and Roper are liable for Trammell's violations of plaintiff's Fourteenth Amendment

rights, presumably his right to substantive due process.[1]   The Fourteenth Amendment, section 1, restrains the states from depriving any person of life, liberty, or property without due process of law.   However, "*[a]ll* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quotation marks omitted).   Following this directive, claims that a police officer used an objectively unreasonable amount of force during a stop under color of law, like plaintiff's claims, should be analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *See id.*   Accordingly, plaintiff's § 1983 claims as against Trammell, the City, and Roper will be dismissed insofar as the claims are based on the Fourteenth Amendment.

### C.   Fifth Amendment

Plaintiff asserts that Trammell violated his Fifth Amendment

---

[1] The amended complaint does not contain allegations that suggest violations of the Fourteenth Amendment's Privileges or Immunities Clause or Equal Protection Clause.   Although "[c]overing up the use of excessive force may hinder a criminal defendant's access to the courts to redress a constitutional violation, a right protected by several constitutional provisions," plaintiff does not claim that the City and Roper tried to cover up misconduct, only that they failed to train and supervise Trammell and the BPD. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (citation omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002).

rights in paragraph 30, although he does not reference the Fifth Amendment elsewhere in the amended complaint. Doc. 35 at 9-10. The court infers that plaintiff intended to plead violations of his Fifth Amendment right to substantive due process.[2] As noted above, police officer excessive force claims "should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quotation marks omitted). Thus, plaintiff's § 1983 claims as against Trammell, the City, and Roper will be dismissed insofar as the claims are based on the Fifth Amendment.

### D.   Fourth Amendment

The Fourth Amendment is the proper source for assessing claims of constitutional violations in relation to police officer force in the course of an investigatory stop. *Id.* This section analyzes plaintiff's § 1983 claims based on the Fourth Amendment as against (1) the City, (2) Roper in his official capacity, (3) Trammell in his official capacity, (4) Trammell in his individual capacity, and (5) Roper in his individual capacity. The court concludes that the amended complaint states a claim as against Trammell in his individual capacity, but fails to state a claim as against the

---

[2] Although incorporated against the states under the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment's Double Jeopardy Clause, privilege against self-incrimination, and Just Compensation Clause do not apply naturally to the facts of the case. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742 n.12 (2010). The grand jury indictment requirement has not been incorporated. *Id.* at 742 n.13.

City, Roper in either capacity, or Trammell in his official capacity.

*The City*

Liability for a municipality under § 1983 for the conduct of its employee does not rest on respondeat superior or any other theory of vicarious liability. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Rather, the municipality can be held directly responsible for constitutional deprivations only if they resulted from an official policy or a custom so widespread as to have the force of law. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Plaintiff must show "a direct causal link between the municipal action and the deprivation of federal rights" and must show that "the municipal action was taken with the requisite degree of culpability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). In the context of inadequate police training and supervision, as claimed by plaintiff, "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference may be shown by "evidence that the municipality knew of a need to train and/or supervise in a particular area and the

municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has made clear that a municipality cannot be held liable for failing to train or supervise "without notice of a need to train or supervise in a particular area," which requires awareness of a pattern of "similar" constitutional violations. *Id.* at 1351.

It is not enough that plaintiff's amended complaint asserts the conclusions that the City acted with "deliberate indifference" and had "direct notice" of Trammell's and other officers' "widespread abuse," or asserts that Trammell acted pursuant to the "customs or practice" of the City. Doc. 35, ¶¶ 24, 27, 28, 47. This court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

In the present case, plaintiff has not alleged sufficient facts to plausibly indicate that the City knew of specific prior incidents of similar constitutional deprivations that would give the City notice of the need to further train or supervise the BPD. Although the amended complaint presents some statistical data, the court agrees with Magistrate Judge Putnam that "[t]he raw statistical evidence ..., in the absence of some context or expert explanation, simply fails to present anything probative on the question of whether the City is on notice of a need for more

10

supervision or training." *Thompson v. City of Birmingham*, 2:12-CV-00623-TMP, 2014 WL 1043631, at *12 (N.D. Ala. Mar. 14, 2014); *see* Doc. 35 ¶ 29.  No fact-finder has any means of knowing whether 2,449 Use of Force Reports and 203 excessive force complaints between January 1, 2007, and February 1, 2012, are large or small numbers in proportion to Birmingham's population, or whether a percentage of such reports and complaints are presumed to be well-founded. *See id.*  Furthermore, these numbers are not subdivided by year in the amended complaint; they may well show a significant **decrease** per annum.  Without context and analysis, this raw data does nothing to establish a pattern of constitutional violations——much less **similar** violations——that would give the City notice of the need to further train or supervise the BPD.

In the amended complaint, plaintiff also references multiple excessive force allegations that resulted in state and federal lawsuits.  The Eleventh Circuit has held that **complaints** of police misconduct **alone**, without a demonstration that such complaints have merit, do not establish a pattern of similar constitutional violations and do not give the city notice of police misconduct. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (citing *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987)).  As the Eleventh Circuit has observed, "'the number of complaints bears no relation to their validity.'" *Id.* (quoting *Brooks*, 813 F.2d at 1191).  The amended complaint does not allege the dispositions of the five

excessive force cases or show that the cases have (or had) any merit.[3]  This court, perhaps of its own motion, could take judicial notice of the records for those cases, but no party has submitted the records or even listed the case numbers, and the court declines to conduct massive research on its own time and initiative.  The mere fact that five lawsuits were filed and included excessive force allegations does not establish a pattern of similar constitutional violations that gave the City notice of a need to further train or supervise the BPD.  Likewise, the number of excessive force complaints that the BPD investigated over five years has little significance without information about how many of the complaints had merit. *See id.*; Doc. 35, ¶ 29.

Even if the claims of excessive force referenced in the amended complaint were demonstrated to have merit, they are not so "substantially similar" to Trammell's alleged misconduct that they form a pattern of similar constitutional violations. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *Gold*, 151 F.3d at 1351.  The limited information in the amended complaint indicates that the police conduct complained of in at least five of

---

[3] The City and Roper claim in their joint Reply that none of the alleged instances of excessive force referenced in plaintiff's amended complaint has been sustained. Doc. 43 at 4-5.  The court has not taken judicial notice of any court records, so the court considers only the information in the amended complaint.  The amended complaint mentions five lawsuits; it mentions none relating to the sixth incident, only internal investigations. *See* Doc. 35, ¶ 27(a).  Regardless, the sixth incident involved dissimilar facts, so it could not form a pattern even though the sustained improper use of force complaints suggest that those complaints had merit.

the six claims occurred during arrests.[4] Doc. 35, ¶ 27.
Hypothetically, if none of those officers encountered resistence
and a plaintiff demonstrated that all five claims had merit, those
five claims might provide notice to the City that the BPD requires
further training and supervision on appropriate force when an
officer makes an arrest and encounters no resistance.  However,
plaintiff does not claim that Trammell engaged in substantially
similar conduct.  Using excessive force during an arrest when o
resistance is offered differs markedly from pulling over a vehicle
for no reason and shouting and pointing a gun at the passengers
with no provocation.  Plaintiff also does not allege specific facts
indicating that Trammell himself committed other similar
constitutional violations such that the City might have notice that
Trammell as an individual requires further training or supervision.

In sum, plaintiff has not alleged facts showing that
Trammell's claimed misconduct fits within a pattern of
substantially similar constitutional violations such that the City
would have notice that the BPD or any officer requires further
training or supervision in a specific area.  Without any facts to

---

[4] The sixth excessive force claim in the amended complaint (listed
first) does not fit naturally with the other five because plaintiff does
not specify the status of the "unconscious man," i.e., the circumstances
under which the man came to be thrown from a car, unconscious, and in the
presence of police officers. See Doc. 35, ¶ 27(a).  Certainly, the facts
provided about this claim differ significantly from plaintiff's
narrative.  Plaintiff was not thrown from a car and beaten while
unconscious.  Thus, this claim also would not be "similar" to plaintiff's
claim for the purposes of establishing a pattern of similar
constitutional violations.

show that the City had notice, the City's alleged failure to train or supervise does not evidence "deliberate indifference" or rise to the level of a custom actionable under § 1983. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Accordingly, plaintiff's § 1983 claims as against the City will be dismissed insofar as they are based on the Fourth Amendment.

### *Roper in his official capacity*

Suits against government officials in their official capacities "'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and, "in all respects other than name, [are] to be treated as a suit against the entity." *Id.* (quotation and citation omitted). Plaintiff's § 1983 claim based on the Fourth Amendment will be dismissed as against Roper in his official capacity for the same reasons that it will be dismissed as against the City.

### *Trammell in his official capacity*

Suits against government officials in their official capacities "'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and, "in all respects other than name, [are] to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quotation and citation omitted). Plaintiff's § 1983 claim based on the Fourth Amendment will be dismissed as against Trammell in

14

his official capacity for the same reasons that it will be dismissed as against the City.

### *Trammell in his individual capacity*

Under the doctrine of qualified immunity, a government official acting within his discretionary authority is immune from suit unless the official's conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As an initial step, the official has the burden to demonstrate that he was acting within his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *See Jordan v. Doe*, 38 F.3d 1559 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988), *modified in part by Hope*, 536 U.S. at 736-38.  Trammell asserts, and plaintiff does not contest, that Trammell's self-identification as a BPD officer and presentation of his BPD badge upon stopping plaintiff's car satisfies this burden. *See* Doc. 37 at 5; Doc. 40, ¶¶ 4-9.  The court is satisfied that these objective circumstances compel the conclusion that Trammell stopped plaintiff in performance of his duties as a BPD officer and did so within the scope of that authority.

Having established that Trammell was acting within his

15

discretionary authority, plaintiff has the burden to show that Trammell is not entitled to qualified immunity. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014).  The Supreme Court has created a two-part test for whether an official is entitled to qualified immunity. *Id.*  The court must determine whether plaintiff's allegations, if true, "establish a constitutional violation." *Hope*, 536 U.S. at 736.  If they do, the court next must assess whether the constitutional right allegedly violated was "clearly established" at the time. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  For the second step of evaluating whether a right is clearly established, "the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Caldwell*, 748 F.3d at 1102 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1359 (11th Cir. 2003)).  Applied to the present case, the court finds that plaintiff has satisfied his burden such that Trammell is not entitled to qualified immunity at this juncture.

Interpreting the facts alleged in the light most favorable to plaintiff, Trammell's conduct was such that no reasonable officer could have believed that his actions were lawful even without reference to materially similar cases. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted).[5]

---

[5] For the sake of brevity, the court does not address the other two ways in which a right can be clearly established. *See Mercado*, 407 F.3d at 1159.

Plaintiff claims that Trammell stopped plaintiff's car for no reason, hit plaintiff in the face, and pointed a gun at plaintiff, his female passenger, and her three minor children——all without Trammell having any cause, without plaintiff posing any threat, and without any "legitimate law enforcement purpose." *See Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).  These specific allegations of fact, if proven, lie "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *See id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (thereby clearly violating the Fourth Amendment's "objective reasonableness" standard for use of force in an investigatory stop).  Thus, Trammell's alleged conduct is "clearly established as a constitutional violation because no reasonable officer could have believed that [his] actions were legal." *Ferraro*, 284 F.3d at 1199.

Interpreting the facts favorably to plaintiff, Trammell is not entitled to qualified immunity and plaintiff has stated a claim upon which relief can be granted, so plaintiff's § 1983 claims as against Trammell in his individual capacity will not be dismissed insofar as they are based on the Fourth Amendment.

### *Roper in his individual capacity*

As discussed above, a government official acting within his

17

discretionary authority is immune from suit unless the official's conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Roper has asserted, and plaintiff has conceded, that Roper was acting within his discretionary authority when training and supervising Trammell. Doc. 38 at 12, n.4; Doc. 26, ¶ 7.   Thus, plaintiff must show that Roper is not entitled to qualified immunity. *Hope*, 536 U.S. at 736.   Accordingly, the court next considers whether plaintiff's allegations establish a constitutional violation and whether the constitutional right allegedly violated was clearly established at the time. *See id.* For the purposes of this section, the court assumes that Trammell's conduct, as described by plaintiff, violated plaintiff's Fourth Amendment rights.   The focus of this section, then, shifts to the second step of the qualified immunity analysis and whether "it was or should have been obvious to [Roper] that what [he] was doing was in violation of federal law" when training and supervising Trammell. *See Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 801-02 (11th Cir. 1998).

Supervisors can violate federal law and be held individually liable for the conduct of their subordinates under § 1983 "when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v.*

*Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).[6] Such a causal connection exists (1) when "a history of widespread abuse" put the supervisor on notice of the need to correct the constitutional deprivation, and he failed to do so; (2) when the supervisor's custom or policy resulted in deliberate indifference to constitutional rights; or (3) when facts support the inference that the supervisor directed his subordinates to act unlawfully or knew that they would and failed to stop them. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Brown*, 906 F.2d at 671) (other citations omitted).  The standard for supervisory liability is "extremely rigorous." *Braddy*, 133 F.3d at 801-02.

Plaintiff's amended complaint uses buzzwords for supervisory liability but contains few supporting factual allegations. Plaintiff claims that "Defendant Trammell and other officers' obvious, flagrant, and rampant behavior, has continued across a lengthy period of time and in doing so is sufficient to put Defendant Roper ... on notice of the widespread abuse and deprivations which resulted in the violation of citizens' constitutional rights ...." Doc. 35, ¶ 27.  The amended complaint also claims that Roper acted with "deliberate indifference" and "as a matter of custom and practice." Doc. 35, ¶¶ 47-48.  This language

---

[6] Supervisor liability can also occur when the supervisor directly participates in the constitutional deprivation, *see Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 801 (11th Cir. 1998), but plaintiff does not allege that Roper directly participated in Trammell's alleged misconduct.

clearly mirrors the first two categories of causal connections for supervisory liability above, but the court is not required to accept as true "legal conclusions[] couched as factual allegation[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Plaintiff's bare assertions that Roper had notice and knowledge do not suffice; the "conclusory nature" of such assertions "disentitles them to the presumption of truth." *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

As for factual content, the amended complaint includes six other specific incidents involving alleged excessive force in addition to plaintiff's allegations about his encounter with Trammell. The amended complaint notably lacks any specific allegation that Trammell himself committed any other misconduct.[7] Plaintiff claims that one of the six other excessive force incidents resulted in the BPD internally sustaining five improper use of force claims but, otherwise, makes no allegations as to the results of the associated lawsuits and does not seek judicial notice of their findings. *See* Doc. 35, ¶ 27. This incomplete information does not reasonably allow an inference that all six incidents generated meritorious excessive force claims that gave

---

[7] Plaintiff claims that Roper said that BPD supervisors "need to do a better job of reporting and documenting uses of force by police officers," Doc. 26, ¶ 24 (quoting *Thompson v. City of Birmingham*, 2:12-CV-00623-TMP, 2014 WL 1043631, at *12 (N.D. Ala. Mar. 14, 2014)). Another plaintiff made this allegation, and plaintiff did not include it in his amended complaint as a sworn factual allegation. Accordingly, this court does not consider it as part of the pleadings in the motions to dismiss.

notice to Roper that the BPD and Trammell required further training or supervision, or to otherwise infer that Roper had knowledge. Without Roper having notice or knowledge, plaintiff cannot demonstrate the causal connection required for supervisory liability under the first two categories.

Plaintiff tacitly acknowledges the lack of factual support by stating, "that is what discovery is for," emphasizing the pleading standard, and arguing for time to gather more details during discovery. Doc. 41, ¶¶ 8-9. Rebutting qualified immunity imposes more of a burden than stating a claim, however, and even stating a claim "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Pleadings that fail to state a claim are not entitled to discovery to improve their factual foundation. *Id.*

Lacking factual allegations to support plaintiff's bare assertions, the amended complaint does not plausibly show a causal connection between Roper's actions and Trammell's alleged misconduct or satisfy the "extremely rigorous" standard for § 1983 supervisory liability. *See Braddy*, 133 F.3d at 801-02. Therefore, the court concludes that Roper is entitled to qualified immunity, and plaintiff's § 1983 claim as against Roper in his individual capacity based on the Fourth Amendment will be dismissed.

## II.  Declaratory and Injunctive Relief — Count 4

In count four of the amended complaint, plaintiff seeks

declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02. More specifically, plaintiff asks the court to order the City and Roper to cease the acts leading to the claimed unlawful conduct and to adopt remedial policies and practices.   The court notes that plaintiff, the City, and Roper explicitly rely on their arguments from the first round of briefing.[8] Doc. 38 at 12; Doc. 41 at 7 n.2. However, those earlier arguments only addressed the facts alleged in the **original** complaint, not the facts alleged in the amended complaint.  Although plaintiff did not alter the language of count four in the amended complaint, he did add to the incorporated factual allegations.   The added facts significantly affect the request for injunctive relief and limit the relevance of the parties' earlier arguments.  The court must consider **all** facts from the amended complaint in the light most favorable to plaintiff.

      To obtain injunctive relief, a party must prove "a real and immediate——as opposed to a merely conjectural or hypothetical—— threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337-38 (11th Cir. 1994).  In cases involving police force, two critical factors in showing the threat of future injury are whether the police target a particular group, and whether the

---

      [8] The City and Roper point out that plaintiff conceded count four at hearing on June 2, 2014.  However, the court stated at hearing that it would not consider the concession as a dismissal of the claim.   Instead, plaintiff could include count four in the amended complaint, and the parties could argue its merits in the renewed motions to dismiss.   The parties did not argue the merits anew or at length, but the court still will consider them.

police have an affirmative policy of ordering or authorizing officers to act in such a way. *See id.* at 1337; *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003).

These factors were prima facie present in *Church v. City of Huntsville*,[9] when the plaintiffs alleged that the police had an affirmative policy of harassing and arresting homeless persons as part of a campaign to drive the homeless out of the city. 30 F.3d at 1339. Thus, homeless persons as a group were "far more likely to have [similar] future encounters with the police" than other citizens. *Id.* at 1337. Conversely, these factors were absent in *City of Los Angeles v. Lyons*, when the police stopped Lyons for a traffic violation and, "without provocation or legal excuse," seized him and applied a chokehold. 461 U.S. 95, 97, 111 (1983). Lyons could not show that he was "more entitled to an injunction than any other citizen of Los Angeles," and he did not claim that the police ordered or authorized officers to use chokeholds on all citizens without provocation. *Id.* at 106, 108.

In the present case, the amended complaint does not claim that the City or Roper is targeting a particular group, or that plaintiff and the six other alleged victims of excessive force have any characteristics in common. The amended complaint also does not

---

[9] The Eleventh Circuit found these factors sufficiently present to confer standing, but did not find that plaintiffs had shown such a substantial likelihood of success on the merits to be granted a preliminary injunction. *Church*, 30 F.3d at 1337-38, 1342-46.

claim that the City or Roper has an affirmative policy of ordering or authorizing BPD officers to stop vehicles without cause and hit drivers without provocation or to use excessive force during arrests. Rather, plaintiff claims that the City and Roper have shown **"implicit** approval" of the unlawful conduct by their "failure to compose, implement and/or enforce policies and procedures to insure [sic] the police employees are not violating the federally protected and Constitutional rights of citizens." Doc. 35, ¶ 55-56 (emphasis added). Such claims, if proven, parallel *Lyons* more than *Church*. Thus, because the amended complaint does not claim that a particular citizen or group of citizens would be threatened by future harm and does not claim that an affirmative policy exists whereby BPD officers are ordered or authorized to violate citizens' rights, the court will dismiss count four as against the City and as against Roper.

## III. State Law Claims Against Trammell — Counts 5-10

Trammell seeks dismissal of counts five through ten of the amended complaint based on his assertion of state-agent immunity pursuant to ALA. CODE § 6-5-338. Counts five through ten consist of the state law claims of negligence/ wantonness, harassment, assault, menacing, outrage, and assault and battery.

Section 6-5-338 "extends state-agent immunity to peace officers performing discretionary functions within the line and scope of their law-enforcement duties." *Howard v. City of Atmore*,

24

887 So. 2d 201, 203 (Ala. 2003) (quotation marks and quotation omitted).  More specific to Trammell's duties, state agents are immune from personal civil liability "when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons ..." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  Plaintiff does not dispute that § 6-5-338 applies to Trammell and that Trammell was acting within his discretionary authority. Doc. 40 at 8-9.  The undisputed facts indicate that Trammell stopped plaintiff's car using his authority as a BPD officer and that he identified himself as such when he approached.  Plaintiff disputes, however, that Trammell is entitled to state-agent immunity.

Trammell has raised the affirmative defense of state-agent immunity and shown that he was acting within his discretionary authority.  In order to nullify state-agent immunity, plaintiff has the burden to allege facts showing that Trammell has acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. *See Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). Plaintiff has alleged sufficient specific facts that are "plausible on [their] face" to meet this initial burden. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).[10]  The amended complaint claims that Trammell stopped plaintiff's car without grounds for doing so, hit plaintiff despite not being threatened, and pointed his gun at the car's occupants without provocation.  These specific allegations, if proven, surely qualify as actions taken willfully, in bad faith, and beyond Trammell's authority as a BPD officer.  Trammell will have the opportunity to file a motion for summary judgment arguing on this issue after the parties have had time to conduct discovery. *See Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000).  For now, however, Trammell is not entitled to state-agent immunity, and the court will deny his motion to dismiss the state law claims against him on this ground.

## IV.  State Law Claims Against Roper — Counts 11-12

Plaintiff does not specify in counts eleven or twelve of the amended complaint whether he makes these claims as against Roper in his **individual** capacity only.  During the first round of briefing, plaintiff conceded that his state law claims both as against the City and as against Roper in his official capacity were due to be

---

[10]  Plaintiff argues that he need show only that he "may **possibly** prevail" and that "[i]t is **conceivable** that [he] could prove [the required] facts ..." *See Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000) (quoting *Patton v. Black*, 646 So.2d 8, 10 (Ala. 1994) (emphasis added). However, the cited cases employ the Alabama 12(b)(6) standard, rather than the federal 12(b)(6) standard that this court must employ, and the cited cases predate *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Twombly* and *Iqbal* require that the complaint "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Plaintiff's amended complaint meets the federal standard, but it is the federal standard that applies.

dismissed. Doc. 26, ¶ 22.  Plaintiff also has conceded that he did not present notice of his claims to the City in compliance with ALA. CODE § 11-47-23, *see* Doc. 26, ¶ 22; and Alabama law deems suits against agents of the city in their official capacities to be "simply another way of suing the City." *Dickinson v. City of Huntsville*, 822 So. 2d 411, 415 (Ala. 2001); *see also Wheeler v. George*, 39 So.3d 1061, 1085, 1088 (Ala. 2009).  The court finds that to the extent plaintiff intended to make the claims in counts eleven and twelve as against Roper in his **official** capacity, plaintiff's conceded failure to comply with § 11-47-23 also bars those claims.  Accordingly, plaintiff's removal of counts twelve and thirteen of the original complaint in the amended complaint also entails dismissal of counts eleven and twelve of the amended complaint as against Roper in his official capacity.

A.   **Respondeat Superior**

In count eleven, plaintiff seeks to hold Roper liable in his individual capacity for Trammell's actions based on respondeat superior.  Respondeat superior rests on the theory that an employer retains a right of control over his employee's actions and, consequently, remains liable for those actions. *See Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006).  "To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of employer and

employee——master and servant." *Id.* (quotation omitted).   The amended complaint, however, states that Trammell "was at all times relevant to this complaint, a police employee of the **City** of Birmingham Police Department," not Roper personally. Doc. 35, ¶ 5 (emphasis added).   Trammell's answer "admits that he is an employee of the Birmingham Police Department." Doc. 36, ¶ 5.   The City also admits that Trammell was an employee of the City. Doc. 19, ¶ 11.

Given that all parties agree that **the City** was Trammell's employer, the law of Alabama is that the City would be liable for Trammell's conduct under respondeat superior only to the extent that the court found Trammell liable and not protected by state-agent immunity. *See Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003); *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003).   The City, not Roper in his individual capacity, is the proper defendant in plaintiff's respondeat superior claim. Unfortunately for plaintiff, the time to present notice of such a claim against the City has passed. *See* § 11-47-23.   Therefore, the court will dismiss count eleven as against Roper in his individual capacity.

### B.   Negligent Failure to Train/ Supervise

In response to count twelve of the amended complaint, the claim of negligent failure to train/ supervise, Roper asserts state-agent immunity pursuant to ALA. CODE § 6-5-338.   Section

28

6-5-338 "extends state-agent immunity to peace officers performing discretionary functions within the line and scope of their law-enforcement duties." *Howard,* 887 So. 2d at 203 (quotation marks and quotation omitted).   Plaintiff does not contest that this provision applies to Roper as Chief of Police because he "is responsible for supervising BPD personnel." Doc. 20, ¶ 12; Doc. 26, ¶ 7.   State agents are immune from personal civil liability "when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising his or her judgment in the administration of a department or agency of government ..." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).   Roper's duties fall under this category of activities qualifying for state-agent immunity. *See Howard*, 887 So. 2d at 203, 210.   Thus, Roper is entitled to immunity unless plaintiff can show that Roper acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *See Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala. 2006).

Plaintiff contends that Roper is not entitled to state-agent immunity because Roper acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. *See id.*   Plaintiff claims that he has made such a showing in two ways.[11]   First, plaintiff says that he

---

[11] For count twelve, plaintiff explicitly relies on his arguments from the first round of briefing, Doc. 41 at 7, n. 2, except to the extent that he addresses this count in document 41. *See* Doc. 41 at 5-6,

"alleged that Roper has acted with 'deliberate indifference' in failing to correct rampant and flagrant constitutional violations by his officers." Doc. 26, ¶ 24.  Although the amended complaint does include such allegations, legal conclusions do not suffice as replacements for factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  Second, plaintiff asserts as evidence the facts section of a recent district court opinion, which included the plaintiff's allegation that Roper had acknowledged that BPD supervisors "need to do a better job of reporting and documenting uses of force by police officers." Doc. 26, ¶ 24 (quoting *Thompson v. City of Birmingham*, 2:12-CV-00623-TMP, 2014 WL 1043631, at *12 (N.D. Ala. Mar. 14, 2014)).  The *Thompson* court's factual summary and that plaintiff's allegation have no relevance to the present case; this case's plaintiff did not include Roper's alleged statement in the amended complaint, so it has no place in this court's consideration.

Plaintiff obliquely addresses the dearth of facts to nullify state-agent immunity by stating that "whether Roper's failures to train and supervise were willful, malicious, fraudulent, or in bad faith ... are all particularly within the knowledge of the City, Roper, and the BPD, and are not things to which Tolbert has ready access pre-suit." *See* Doc. 41 at 5-6.  While discovery may yield helpful information, it is plaintiff's burden to allege facts

---

n.1.

sufficient to state a claim at the pleading stage——including facts showing that Roper is **not** entitled to state-agent immunity. Plaintiff cannot "unlock the doors of discovery ... armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court concludes that plaintiff has not satisfied this burden with the few facts presented. Therefore, the court will dismiss count twelve as against Roper in his individual capacity based on state-agent immunity.

## CONCLUSION

For the reasons detailed above, the court will dismiss counts three and four of the amended complaint as against the City and Roper in both capacities, counts one and two as against Trammell in his official capacity, and counts eleven and twelve as against Roper in both capacities. An appropriate, separate order will be entered.

DONE this 4th day of August, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE